IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01875-KAS

M.T.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the **Social Security Administrative Record** [#6], filed September 23, 2022, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed an Opening Brief [#10] (the "Brief"), Defendant filed a Response [#11] in opposition, and Plaintiff filed a Reply [#12]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[2]

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#7]; *Reassignments* [#13, 14]; *Order of Reference* [#15].

## I. Background

On May 18, 2018, Plaintiff filed an application for disability insurance benefits under Title II, alleging disability beginning December 20, 2017. Tr. 16, 130.[3] He has since amended his alleged onset date to January 26, 2018. Tr. 16.[4] His claim was denied on December 28, 2018, and on January 21, 2019, he requested a hearing by an Administrative Law Judge ("ALJ"). Tr. 126, 156, 163. On June 27, 2019, an ALJ issued an unfavorable decision. Tr. 130-146. On October 18, 2019, the Appeals Council vacated the ALJ's decision and remanded for reconsideration. Tr. 151-53. On April 23, 2020, an ALJ issued a second unfavorable decision. Tr. 16-31. On June 2, 2022, the Appeals Council denied Plaintiff's request for review. Tr. 1-3.

In her April 23, 2020 decision, the ALJ first determined that Plaintiff met the insured status requirements of the Act through December 31, 2022, and that he had not engaged in substantial gainful activity ("SGA") since January 26, 2018, the alleged onset date. Tr. 18. The ALJ then found that Plaintiff suffers from five severe impairments: (1) left hip left femoral head avascular necrosis status post left hip core decompression, (2) bilateral cubital tunnel syndrome status post left ulnar decompression, (3) major depressive disorder, (4) anxiety disorder, and (5) post-traumatic stress disorder ("PTSD"). *Id*. However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 6-1 through 6-11, by the sequential transcript numbers instead of the separate docket numbers.

[4] On May 9, 2017, Plaintiff had filed a prior social security disability application alleging disability beginning on January 31, 2017, which an ALJ denied on January 25, 2018. Tr. 93-104. At a June 4, 2019 ALJ hearing on Plaintiff's current claim, his counsel acknowledged that Plaintiff was not seeking to reopen the prior claim and agreed that res judicata barred consideration of any claimed disability on or before the ALJ's January 25, 2018 decision in that claim. Tr. 41-42.

in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 20.

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform "a range of light work,"[5] with the following limitations:

> [C]an lift or carry up to 10 pounds frequently and 20 pounds occasionally. The claimant can stand or walk a total of 4 hours in an 8-hour workday and can sit a total of 6 hours in an 8-hour workday, with normal breaks. The claimant can perform pushing and pulling motions with upper and lower extremities within the weight restrictions given. The claimant can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching. However, the claimant is limited to frequent handling with the left, nondominant, upper extremity. The claimant can occasionally climb ladders, ropes and scaffolds, climb ramps and stairs, crouch, kneel, and crawl. The claimant can frequently stoop. The claimant requires work that is only occasionally in direct contact with the public. He also requires work that requires attention to detail but not more complex duties. He is able to work at an appropriate and consistent pace and complete tasks in a timely manner. He is able to persist at tasks that can be learned in up to 6 months on the job. He is able to respond to demands and adapt to changes in work requiring attention to detail but not more complex duties.

Tr. 22. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could perform his past relevant work as a food inspector. Tr. 31. The ALJ therefore found that Plaintiff was not disabled at step four. Tr. 31.

The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[5] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [one] must have the ability to do substantially all of these activities. If someone can do light work, [the agency] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec. of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

### A.    The Five-Step Framework

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations," and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). Further, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.   Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d

6

at 1148. Rather, "[the Court] review[s] the Secretary's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g); *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "failure to apply the correct legal standard or to provide th[e] [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal" separate from a lack of substantial evidence. *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ erred by (1) failing to consider the determination by Department of Veterans Affairs ("VA") that Plaintiff is unemployable; (2) concluding that Plaintiff attended full-time college courses, which is not supported by substantial evidence; (3) failing to consider the effects of Plaintiff's anxiety attacks on his RFC; and, as a result of these errors, (4) making "findings of fact regarding the Plaintiff's RFC and

ability to return to past work as a food inspector which are not supported by substantial evidence." *Brief* [#10] at 8, 14-17.

### A.     Consideration of VA Employability Determination

Plaintiff argues that the ALJ erred by failing to consider the VA's determination that he is unemployable. *Brief* [#10] at 8, 17. He acknowledges that the VA's finding is not binding on the Commissioner but asserts that "the ALJ cannot ignore it." *Id.* at 8. Defendant responds that "the controlling regulations specifically state that evaluations by the Department of Veterans Affairs need not be discussed." *Response* [#11] at 10.

Under 20 C.F.R. § 404.1520b(c)(1), "decisions by other governmental agencies and nongovernmental entities" are "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled or blind under the Act," and "[the SSA] will not provide any analysis about how [it] considered such evidence in [its] determination or decision." *Id.* Because different agencies and entities, "such as the Department of Veterans Affairs," use different rules to determine benefits, "[the SSA] will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether [a claimant is] disabled." 20 C.F.R. § 404.1504. Both sections apply to "claims filed on or after March 27, 2017." *Id.*; 20 C.F.R. § 404.1520b(c).

Here, Plaintiff's claim was filed in May 2018, so under the operative regulations, the ALJ was not required to provide any analysis of the VA's determination that he is unemployable. Tr. 294. The ALJ explained this in her decision. Tr. 28 ("In accordance with 20 CFR 404.1520b(c) . . . no articulation has been presented about evidence of this

nature."). Accordingly, the Court finds no error in the ALJ declining to discuss the VA's findings.

**B.     College Attendance**

Plaintiff also argues that the ALJ's conclusion that Plaintiff attended full-time college courses is not supported by substantial evidence. *Brief* [#10] at 15-16. He argues that, instead, he attended college in a "highly sheltered environment" and that the ALJ "made no determination whether the accommodations required for the Plaintiff to attend school would be available in any employment situation." *Id.* at 16. He describes several schooling accommodations which, he believes, reflected a more sheltered school environment than the ALJ considered. *Id.* (citing Tr. 79). Defendant responds that "the ALJ fully and accurately described such accommodations" and that the ALJ had not relied solely on Plaintiff's ability to attend college in determining his RFC. *Response* [#11] at 15.

The ALJ's decision relied, in large part, on Plaintiff's college attendance. *See, e.g.*, Tr. 20-21, 24-25. References to his college attendance or performance underlie the ALJ's findings that: Plaintiff had a mild limitation in understanding, remembering or applying information; Plaintiff had a moderate limitation in interacting with others; and that Plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace. Tr. 20-21. The ALJ also explicitly rested her finding that "claimant can be around other people and is able to engage in social interaction so long as it is not prolonged or overly personal" on "his ability to attend community college on a full-time basis during the fall and spring semesters." Tr. 24. Relatedly, the ALJ pointed out that Plaintiff "had passed a math class, but failed a class about how to be a good student because it involved sharing his feelings in interacting with others." *Id.* (citing Tr. 1715).

The Court finds no error in the ALJ's characterization of Plaintiff's college attendance. At the first oral hearing, the ALJ asked Plaintiff how many credit hours he had taken in the spring. Tr. 44. Plaintiff said he had taken nine credit hours, which was considered full-time. *Id.* The ALJ's conclusion that Plaintiff attended full-time college courses is not unsupported, as Plaintiff argues; rather, it relied on Plaintiff's own testimony. *Brief* [#10] at 15, 16; *cf.* Tr. 44 ("That was fulltime, Your Honor."). To the extent Plaintiff frames his schooling as a "highly sheltered environment," *Brief* [#10] at 16, the ALJ explained why his testimony on that point was not fully persuasive:

> With regard to the claimant's testimony concerning the accommodations provided to him by the community college, the undersigned notes that the record does not contain any statement confirming these accommodations from the disability services office at his college. Likewise, the claimant's medical records only note that he has accommodations for his anxiety [Tr. 1805], but do not note any specific accommodations. The undersigned finds that the claimant's records support difficulty with more than occasional direct contact with the public. Additionally, the accommodations regarding the claimant's testing, as well as his report of needing to reread material in order to understand it and remember it support limitations work [sic] requiring attention to detail but not more complex duties and tasks that can be learned in up to 6 months on the job.

Tr. 25. The ALJ addressed the accommodations she could identify and found that the testing accommodation, in particular, supported specific work limitations that she included in her RFC. *Compare* Tr. 25, *with* Tr. 22 (including RFC limitation that Plaintiff "requires work that requires attention to detail but not more complex duties. He is able to persist at tasks that can be learned in up to 6 months on the job."). The Court notes that Plaintiff's list of school accommodations cites only to his testimony at the oral hearing—this does not rebut the ALJ's point that his claimed schooling accommodations are not corroborated

10

by other evidence on the record.[6] *Brief* [#10] at 16 (citing Tr. 79); *cf.* Tr. 24 (noting that "the record does not contain any statement confirming these accommodations from the disability services office at his college."). Plaintiff then argues that "the ALJ wrongfully concluded the Plaintiff's medical records did not have any specific accommodations, contrary to the list of accommodations detailing his behavioral strategies," but behavioral strategies to counter anxiety or depression are not the same thing as schooling accommodations. *Brief* [#10] at 16.

Plaintiff fails to identify any specific schooling accommodations in his medical records (or his school records, for that matter)—the only mention appears to be a September 24, 2018 note, which the ALJ expressly considered. Tr. 25 (stating that "the claimant's medical records only note that he has accommodations for his anxiety [Tr. 1805], but do not note any specific accommodations") (citing Tr. 1805 (noting Plaintiff reports that "he went to the accessibility office. He has accommodations for his anxiety. He feels much better.")).

Moreover, the ALJ's references to Plaintiff's college coursework largely relied on medical records which discussed the topic. *See, e.g.,* Tr. 21 (citing a "August 2018 psychological consultative evaluation [in which] the examiner noted that he was able to pass his math class, but he failed the class where he had to share his feelings [Tr. 1715]. This indicates an adequate ability to be around people, as well as allowing for superficial

---

[6] Plaintiff argues that there is no legal requirement that he submit a supporting statement from college regarding accommodations. *Brief* [#10] at 16. This is true, but because the claimant bears the burden of proving a disability, he omits corroborating evidence at his own peril. *Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) (stating that "the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability.") (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004)).

11

interaction, so long as it does not require the claimant to open himself up personally."); Tr. 20 (noting that "in June 2018, James L. Bixler, PsyD, reported the claimant had good response to treatment resulting in 'increased emotional openness and an increase in socialization demonstrated by the claimant enrolling in school' ([Tr. 996])").

Overall, Plaintiff has failed to show that the ALJ inappropriately considered his college attendance or inappropriately downplayed his schooling accommodations. The record shows that the ALJ considered his accommodations and, as a result, found mild to moderate limitations in various areas. Tr. 20-21, 24-25. Plaintiff does not explain why a "highly sheltered" college environment or accommodations militate for a more restrictive RFC than what the ALJ found, which included: only occasional direct contact with the public; attention to detail but not more complex duties; can work at an appropriate and consistent pace and complete tasks in a timely manner; can persist at tasks that can be learned in up to 6 months on the job; and is able to respond to demands and adapt to changes in work requiring attention to detail but not more complex duties. *Brief* [#10] at 8 (citing Tr. 22); *see Orso v. Colvin*, 658 F. App'x 418, 420-21 (10th Cir. 2016) (finding no reversible error where the claimant made "no showing or argument as to how the RFC limitations would need to be changed" because "[t]he burden to prove disability in a social security case is on the claimant"). Accordingly, the Court finds no error in the ALJ's consideration of Plaintiff's college attendance or college accommodations.

C.     **Anxiety Attacks**

Plaintiff argues that the ALJ failed to consider the effects of his anxiety attacks on his RFC because she found "there is no objective substantiation of medical necessity" of him taking 35- to 40-minute breaks during these anxiety attacks. *Brief* [#10] at 14. He

argues that "objective evidence is not required" to evaluate a psychological disorder and asserts that "his treatment plan is set out in his records ([Tr.] 1875)," showing that his "coping strategies are part of his treatment and panic/anxiety attack management." *Id.* at 15. Nonetheless, he claims that his medical records contained "no normal mental exams." *Id.* at 13. Defendant responds that the ALJ found numerous largely normal mental status examinations, that she considered Plaintiff's claimed anxiety symptoms, and that she did not have to accept his subjective claims about his functional abilities. *Response* [#11] at 11-14.

First, Plaintiff's assertion that objective evidence is not required for the ALJ to evaluate a psychological disorder is incorrect. *Brief* [#10] at 14; *but cf.* 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment"); *see also White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001) (stating that, where "much of [the treating physician's] assessment was based on [the claimant's] subjective assertions rather than objective medical evidence," the ALJ did not err in rejecting that assessment); *Orso*, 658 F. App'x at 420 (stating that "the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability") (citation omitted).

Regarding Plaintiff's anxiety attacks, the ALJ explained why she found "the claimant's statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the

13

record." Tr. 23. For example, by the end of September 2018, Plaintiff's "panic attacks were no longer stopping him from going to school," and even though "his panic attacks had not stopped, he reported doing more despite them and working around them." Tr. 24 (citing Tr. 1805-06). She pointed to reports in September 2018 and November 2018 showing that "his panic attack symptoms were manageable and did not prevent him from being able to continue to go to school." *Id.* (citing Tr. 1796-97, 1806). In 2019, despite Plaintiff reporting anxiety attacks once or twice a week, "treatment records during 2019 reflect quite normal mental status findings overall. For example, records from March 2019 note an anxious mood but otherwise normal mental status findings [Tr. 1926-27]. Later records note similar findings [Tr. 1872, 1900]." Tr. 24.[7] The ALJ could properly consider this evidence which tended to show that panic attacks were less debilitating than Plaintiff claims. *Cf. Medina v. Barnhart*, 68 F. App'x 890, 892 (10th Cir. 2003) (affirming ALJ finding no disability based, in part, on evidence that medication helped with the claimant's panic attacks and her testimony that panic attacks were less frequent than before).

Plaintiff's brief collects several medical records which mention "borderline panic attacks 1-2x/week" but, curiously, he omits the rest of each note. *Brief* [#10] at 13 (citing Tr. 1874, 1892, 1902, 1929); *cf.* Tr. 1874 ("moderate anxiety w/ borderline panic attacks 1-2x/week *likely secondary to PTSD vs panic disorder*") (emphasis added), 1892 (same) 1902 (same), 1929 (same). These medical records indicate that Plaintiff's panic attacks are likely secondary to PTSD, and every one of them also notes "poorly controlled PTSD symptoms" contributing to insomnia. *See* Tr. 1874, 1892, 1902, 1928. In other words,

---

[7] The Court also notes that, at the March 3, 2020 oral hearing before the ALJ, Plaintiff discussed his ongoing psychological treatment and medications he was taking for depression and anxiety, but he did not mention ongoing panic attacks or any treatment for panic attacks. Tr. 82-83. His counsel did not follow up to ask about panic attacks. *See generally* Tr. 82-89.

Plaintiff's medical records link his panic attacks to his PTSD rather than a separate panic disorder condition. This is notable because the ALJ expressly found that PTSD was one of claimant's "severe impairments" which "significantly limit the ability to perform basic work activities." Tr. 18-19.

Plaintiff fails to show that the ALJ's consideration of his anxiety attacks was erroneous, especially because the ALJ already considered major depressive disorder, anxiety disorder, and PTSD to be "severe impairments," and the records suggest that the borderline panic attacks are likely secondary to PTSD. Tr. 18-19, 1874, 1892, 1902, 1928; *see Medina*, 68 F. App'x at 893 (finding no error where the ALJ "incorporat[ed] some of the very limitations plaintiff claimed the ALJ ignored").

For the same reason, Plaintiff's emphasis on the lack of "normal mental exams" is a red herring. *Brief* [#10] at 13; *Reply* [#12] 4-8. Plaintiff is correct that "the records show that Plaintiff has ongoing mental issues with anxiety, depression [and] PTSD which require regular medications, counseling and psychiatric appointments" and that "a normal person does not have mood disorders." *Reply* [#12] at 7. Had the ALJ ignored those ongoing and apparent mental issues in the medical record, the Court agrees that would have been reversible error. *Cf. Grogan v. Barnhart*, 399 F.3d 1257, 1264-66 (10th Cir. 2005) (holding that the ALJ had erred in finding the claimant had no mental impairment at all, despite medical expert testimony and other evidence that the claimant was manifesting symptoms of PTSD during the insurance window, evidence that had been readily apparent from the record). However, the ALJ expressly found that Plaintiff was severely impaired by mood disorders including anxiety, depression, and PTSD. Tr. 18. Moreover, the ALJ qualified her discussion of mental status exams: "normal mental status

examination findings *apart from an anxious mood*"; "*generally* normal mental status examination findings"; "*an anxious mood but otherwise* normal mental status findings." Tr. 23-24 (emphasis added).

The Court cannot conclude, from its review of the record, that the ALJ improperly overlooked or failed to consider Plaintiff's panic attacks. The ALJ cited record evidence tending to show that they "were no longer stopping him from going to school," that "he reported doing more despite them and working around them," and that "propranolol helped with his anxiety and made his panic less severe." Tr. 18 (citing Tr. 1805-06). She found "no objective substantiation of the medical necessity" of Plaintiff taking 35- to 40-minute breaks during anxiety attacks. Tr. 24.[8]

The Court finds *Medina v. Barnhart*, 68 F. App'x at 892, instructive. There, the Tenth Circuit Court of Appeals affirmed an ALJ's finding that the claimant's anxiety attacks were controlled by medication and had become less frequent than before. *Medina*, 68 F. App'x at 892. Here too, the Court finds that the ALJ's consideration of panic attacks is supported by substantial evidence in the record.

**D.    Sufficiency of the RFC Determination**

Plaintiff argues that the ALJ's RFC determination, and the resulting finding that he is capable of performing past relevant work, is not supported by substantial evidence. *Brief* [#10] at 8, 19. Plaintiff's primary objections include the topics previously discussed, i.e., the VA determination; college coursework and accommodations; and anxiety attacks. There is no need for the Court to repeat its discussion of those arguments, but because

---

[8] The Court does not read this statement as a "failure to consider the necessary coping strategies" for anxiety attacks, as Plaintiff argues, or as a dismissal of the reality of Plaintiff's panic attacks. *Brief* [#10] at 15. Rather, the ALJ is saying that there is no medical evidence supporting Plaintiff's assertion that *a 35- to 40-minute break* is necessary whenever he has a panic attack. Tr. 24.

16

he also broadly alleges that "the ALJ made findings of fact . . . which are not supported by substantial evidence," the Court generally reviews the sufficiency of the ALJ's RFC determination. *Brief* [#10] at 8.

The Court is mindful that "the ALJ is under no obligation to base [his] [RFC] assessment on any particular medical source's opinion" because "the determination of [RFC] is not a medical opinion." *Rex v. Colvin*, 26 F. Supp. 3d 1058, 1063 (D. Colo. 2014) (citation omitted). Instead, RFC "is assessed based on all the relevant medical and other evidence including medical records, observations of treating physicians and others, and plaintiff's own description of his limitations[.]" *Id.* (quoting *Noble v. Callahan*, 978 F. Supp. 980, 987 (D. Kan. 1997) (internal quotation marks and citation omitted)). The ALJ cannot *ignore* medical opinions but is not obligated to include, in the RFC assessment, every limitation possibly suggested by a medical source. *Id.* (citations omitted). "If there are inconsistencies among the sources of evidence, 'the regulations do not say that the ALJ must resolve those inconsistencies by weighing favorable evidence more heavily; rather, the ALJ exercises his discretion to weigh the evidence and make a determination.'" *Israel R. v. Kijakazi*, Case No. 2:22-cv-00704-JCB, 2023 WL 8481408, at *3 (D. Utah Dec. 7, 2023) (quoting *Sandoval v. Kijakazi*, No. 1:21-cv-00471-JHR, 2023 WL 4231007, at *5 (D.N.M. June 28, 2023); citing *Lax*, 489 F.3d at 1084). "The ALJ's RFC assessment is an administrative, rather than a medical, determination." *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling 96-5p, 1996 WL 374183, at *5 (July 2, 1996)).

Here, the record shows that the ALJ considered conflicting medical records, VE testimony, and Plaintiff's testimony in determining Plaintiff's RFC. Tr. 20-31. She

explained that she does "not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from the claimant's medical sources," and that "statements on issues reserved to the Commissioner are inherently neither valuable nor persuasive." Tr. 28. Further, she "fully considered the medical opinions and prior administrative medical findings in the claimant's case." Tr. 28.

The ALJ specifically discussed, among other things, a February 2019 statement by Erika A. Overbeek-Wager, DO; a 2017 disability benefits questionnaire; the December 2018 opinion of State agency medical consultant Virginia Thommen, MD; a July 2018 letter from James L. Bixler, PsyD; the opinion of psychological consultative examiner Victor Neufeld, PhD; the opinion of State agency psychological consultant Gayle Frommelt, PhD; and the opinion of Lisa Renner, MD. Tr. 28-30. She explained why she found some of those opinions persuasive (such as Dr. Frommelt's and Dr. Renner's opinions) and others unpersuasive (such as Dr. Neufeld). Tr. 29-30. In particular, the ALJ found Dr. Neufeld's opinions unpersuasive because they did not match the claimant's actual functioning. Tr. 29.

Overall, the record contains conflicting evidence that could potentially support either a higher or lower RFC than the ALJ determined. *See, e.g.*, Tr. 28 (discussing Dr. Neufeld's opinion about Plaintiff's limitations in social interaction, persistence, pace, flexibility, and adaptation); Tr. 29 (approving of Dr. Frommelt's opinion that Plaintiff was capable of work of limited complexity but which requires accuracy and attention to detail and can respond appropriately to supervision and coworkers but must have minimal to no interaction with the general public as supported by the evidence of record). Plaintiff

fails to show that the ALJ did not properly consider the record or that there was additional record evidence the ALJ failed to consider. Accordingly, the Court finds that the ALJ's RFC determination has sufficient support in the record.

Thus, for the foregoing reasons, the Court finds that the record contains substantial evidence from which the ALJ concluded that Plaintiff is not entitled to benefits under the Act during the time relevant to this case. The ALJ's decision was based on substantial evidence and is free of reversible legal error.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is AFFIRMED.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: March 25, 2024

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge